**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MATTHEW CRANDALL, Individually and on Behalf of all Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>PTC INC., JAMES HEPPELMANN, JEFFREY GLIDDEN, ANDREW MILLER, ROBERT P. SCHECHTER, MICHAEL E. PORTER, PAUL A. LACY, THOMAS BOGAN, and DONALD K. GRIERSON,<br><br>    Defendants. | **Case No.: 16-cv-10471-WGY** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.    PROCEDURAL BACKGROUND OF THE ACTION ..................................................... 1

III.    THE AMENDED COMPLAINT'S ALLEGATIONS ...................................................... 3

IV.    BRIEF SUMMARY OF THE PROPOSED SETTLEMENT ........................................... 5

      A.    The Settlement Class ............................................................................................ 5

V.    ARGUMENT ............................................................................................................. 6

      A.    Certification Of The Settlement Class Is Appropriate ........................................... 6

            1.    The Proposed Settlement Class Meets The Prerequisites For Class Certification Under Rule 23(a) ............................................................... 7

            2.    The Proposed Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ................................................................................................ 10

      B.    Preliminary Approval Of The Settlement Is Warranted ....................................... 13

            1.    The Negotiations Occurred At Arms' Length .......................................... 14

            2.    A Sufficient Investigation Was Conducted .............................................. 15

            3.    The Proponents Of The Settlement Are Experienced In Similar Litigation ................................................................................................ 16

            4.    Number Of Objections ........................................................................... 16

            5.    The Settlement is within the range that might be found approvable. ....... 16

      C.    The Proposed Form And Method Of Class Notice Are Appropriate And Satisfy The Requirements Of Rule 23 ................................................................ 19

VI.    PROPOSED SCHEDULE OF EVENTS .................................................................... 20

VII.    CONCLUSION ......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advert. Special. Nat. Ass'n v. Fed. Trade Comm'n,*
238 F.2d 108 (1st Cir. 1956) .................................................................................. 7

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) ............................................................................................... 11

*Andrews v. Bechtel Power Corp.,*
780 F.2d 124 (1st Cir. 1985) .................................................................................. 8

*Athale v. Sinotech Energy Ltd.,*
No. 11 CIV. 05831 (AJN), 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ........... 19

*Brown v. Steinberg,*
No. 84 CIV. 4654 (CMB), 1990 WL 145151 (S.D.N.Y. Sept. 22, 1990) ............. 14

*Bussie v. Allmerica Fin. Corp.,*
50 F. Supp. 2d 59 (D. Mass. 1999) ........................................................................ 14

*Chatelain v. Prudential- Bache Sec., Inc.,*
805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................................ 18

*City of Providence v. Aeropostale, Inc.,*
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......... 20

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
100 F.3d 1041 (1st Cir. 1996) ................................................................................ 7

*Donovan v. Philip Morris USA, Inc.,*
268 F.R.D. 1 (D. Mass. 2010) ............................................................................ 7, 8

*Durrett v. Housing Auth. of Providence,*
896 F.2d 600 (1st Cir. 1990) .................................................................................. 16

*Ezra Charitable Trust v. Tyco Int'l, Ltd.,*
466 F.3d 1 (1st Cir. 2006) ...................................................................................... 18

*Fidel v. Farley,*
534 F.3d 508 (6th Cir. 2008) ................................................................................. 19

*George v. Nat'l Water Main Cleaning Co.,*
286 F.R.D. 168 (D. Mass. 2012) ........................................................................... 7

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.,*
285 F.R.D. 169 (D. Mass. 2012) ........................................................................... 9

*Grace v. Perception Tech. Corp.,*
128 F.R.D. 165 (D. Mass. 1989) ........................................................................... 7

*Hill v. State St. Corp.,*
No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) .............. 17

*Hochstadt v. Boston Scientific Corp.,*

708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................................ passim

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ............................................................................................ 11

*In re Carbon Black Antitrust Litig.*,
No. CIV.A.03-10191-DPW, 2005 WL 102966 (D. Mass. Jan. 18, 2005) ............................... 7

*In re Credit Suisse-AOL Sec. Litig.*,
253 F.R.D. 17 (D. Mass. 2008) ................................................................................... 10, 12

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
275 F.R.D. 382 (D. Mass. 2011) ............................................................................. 8, 9, 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................ 19

*In re IndyMac Mortgage-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) ............................................................................... 12, 13

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ..................................................................................... 6

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................................... 16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) .......................................................................................... 13

*In re Relafen Antitrust Litig.*,
218 F.R.D. 337 (D. Mass. 2003) .............................................................................. 8, 13

*In re Revco Sec. Litig.*,
142 F.R.D. 659 (N.D. Ohio 1992) ................................................................................ 12

*In re StockerYale, Inc. Sec. Litig.*,
No. 105CV00177-SM, 2007 WL 2410361 (D.N.H. Aug. 21, 2007) .................................. 20

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ......................................................................................... 10

*In re Volkswagen & Audi Warranty Extension Litig.*,
273 F.R.D. 349 (D. Mass. 2011) .................................................................................. 11

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .......................................................................................... 12

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................................... 13

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ........................................................................... 15

*Medoff v. CVS Caremark Corp.*,
No. 09-CV-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ........................................ 13

*Mullane v. Central Bank & Trust Co.*,

339 U.S. 306 (1950) ............................................................................................ 19

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
   247 F.R.D. 253 (D. Mass. 2008) ...................................................................... 10

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*,
   582 F.3d 30 (1st Cir. 2009) .............................................................................. 17

*Overka v. Am. Airlines, Inc.*,
   265 F.R.D. 14 (D. Mass. 2010) .......................................................................... 8

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ............ 14

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003) .......................................................................... 9

*S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
   241 F.R.D. 85 (D. Mass. 2007) .......................................................................... 8

*Smilow v. Southwestern Bell Mobile Sys.*,
   323 F.3d 32 (1st Cir. 2003) .......................................................................... 7, 11

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005) ........................................................... 8, 9, 12, 13

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) ............................................................................ 11

**Statues**

Fed. R. Civ. P. 23(a) ............................................................................................ 7

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 9

Fed. R. Civ. P. 23(a)(4) .................................................................................... 9, 10

Fed. R. Civ. P. 23(b)(1) ........................................................................................ 7

Fed. R. Civ. P. 23(b)(2) ........................................................................................ 7

Fed. R. Civ. P. 23(b)(3) ........................................................................... 7, 10, 11, 12

Fed. R. Civ. P. 23(b)(3)(A)-(D) ............................................................................ 12

Fed. R. Civ. P. 23(e) ........................................................................................... 20

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 19

**Additional Sources**

Manual for Complex Litigation ("MCL"),
   §§21.632-21.635 (4th ed. 2004) ................................................................... 13, 14

## I.     INTRODUCTION

Lead Plaintiff Matthew Crandall ("Lead Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion for Preliminary Approval of Settlement, on the terms set forth in the Stipulation of Settlement, dated January 13, 2017 ("Stipulation" or "Settlement"), which is being filed concurrently herewith.[1]  The proposed Settlement provides for the payment of $2,100,000 in cash to resolve this securities class action against Defendants.[2]

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff seeks an order: (1) granting preliminary approval of the proposed Settlement; (2) certifying the Settlement Class pursuant to Rule 23 for purposes of effectuating the proposed Settlement; (3) directing that Settlement Class Members be given notice of the pendency of this Action and the proposed Settlement in substantially the same form and manner set forth in the Stipulation; (4) setting a hearing date for the Court to consider final approval of the proposed Settlement and related matters ("Final Approval Hearing"); and (5) setting a schedule for various events related thereto.

The proposed Settlement is an excellent result for the Settlement Class under the circumstances, satisfies the governing standards for approval in this Circuit, and is well within the range of fairness, adequacy and reasonableness so as to warrant the Court's preliminary approval and authorization for dissemination of notice of its terms to Settlement Class Members.

## II.     PROCEDURAL BACKGROUND OF THE ACTION

In March 2016, Matthew Crandall filed this securities class action (the "Action") in this

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

[2] Defendants are PTC Inc., James Heppelmann, Jeffrey Glidden, Andrew Miller, Robert P. Schechter, Paul A. Lacy, Thomas Bogan, and Donald K. Grierson.

1

Court on behalf of himself and all purchasers of the common stock of PTC Inc. ("PTC") between November 24, 2011 and July 29, 2015, both dates inclusive (the "Class Period"). Mr. Crandall was the only movant who sought appointment as lead plaintiff. Dkt. # 16. The Court granted his motion in May 2016. Dkt. # 24. The Court also approved his selection of The Rosen Law Firm, P.A. as Lead Counsel and Block & Leviton LLP as Liaison Counsel. *Id.*

Upon appointment, Lead Plaintiff began to further investigate the claims in this action. Lead Plaintiff's investigation included: (a) speaking with former PTC employees located in both the U.S. and China; (b) examining law, enforcement guidance and manuals, speeches by enforcement officials, and other sources concerning the Foreign Corrupt Practices Act (the "FCPA"); (c) reviewing public sources about PTC and the FCPA proceedings against it; and (d) scrutinizing and analyzing the Non-Prosecution Agreement (the "NPA") between PTC and the Department of Justice ("DOJ") and the Order issued by the SEC against PTC, filed in this case as Dkts. # 28-1 and 28-2. Based on this investigation, Lead Plaintiff then timely filed his operative Amended Class Action Complaint for Violations of Federal Securities Laws ("Amended Complaint"), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants. Defendants then timely filed a motion to dismiss the Amended Complaint, which Lead Plaintiff timely opposed.

On September 19, 2016, shortly after Defendants filed their motion to dismiss, the parties began settlement discussions in earnest. The parties held numerous professional but hotly-contested telephone discussions attended by several attorneys from each side. The settlement discussions accelerated while the parties briefed Defendants' motion to dismiss, and were assisted by both the parties' growing understanding of each other's arguments and complex expert damages estimates commissioned by each side. The negotiations bore fruit

shortly after Lead Plaintiff filed his opposition to the motion to dismiss. The parties signed an agreement in principle on November 1, 2016. That same day, the parties notified the Court that a settlement had been reached, and the next day, the Court entered a Settlement Order of Dismissal. Over the next two and a half months, the parties then negotiated the terms of the Settlement.

### III.    THE AMENDED COMPLAINT'S ALLEGATIONS

The Amended Complaint alleges that PTC's Chinese subsidiaries paid bribes to employees of Chinese State-Owned Enterprises ("SOEs") to secure lucrative contracts. The bribes came in the form of leisure travel in the United States, arranged by business partners, as well as moderately-valued gifts of small electronics and the like. ¶¶44, 45. [3] In total, PTC paid about $1.5 million in bribes, and thereby secured contracts earning profits of $11.85 million. ¶44.

The Amended Complaint alleges that PTC itself discovered that its Chinese subsidiaries had been paying bribes in 2008, but did not rectify the misconduct then. ¶47. Instead, in response to the discovery, PTC's Chinese subsidiaries simply stopped using the accounting code they had previously used to account for the bribes, and began employing furtive methods to conceal the bribes from PTC. *Id.*; NPA (dkt. # 28-1) Exh. A ¶8. Nor did PTC report its investigation and its conclusions, either to the U.S. authorities or to investors. ¶48.

In 2011, during the course of investigating complaints against a senior employee of its Chinese subsidiary, Yu Kai Yuan, PTC discovered that he and other employees had been making improper payments to SOE employees. ¶57. Senior management hired legal counsel and an independent consulting firm to investigate the wrongdoing. ¶58. The investigation

---

[3]  All citations to "¶__" refer to the Amended Complaint.

uncovered the earlier 2008 investigation, and others, and its discovery that PTC had been paying bribes. ¶59. PTC self-reported the bribes discovered in 2011 to the SEC and DOJ – but omitted to disclose that it had discovered bribes as early as 2008, or even these earlier bribes themselves. ¶60. And beginning November 2011, Defendants falsely asserted repeatedly to investors that they had self-reported PTC's misconduct to the SEC and DOJ and were fully cooperating with the investigations. ¶¶100, 107, 112, 117, 119.

Self-reporting misconduct to the DOJ and cooperating with its subsequent investigation entitles a company to, among other things, a cooperation credit reducing culpability score by 4, as compared to a company that merely accepts responsibility for its wrongdoing after the fact. ¶85. Given the facts PTC admitted in the NPA, this means full self-disclosure and cooperation would have resulted in a decrease in the minimum/maximum guideline ranges of $9.52 million/$19.04 million. *Id.* Moreover, if the misconduct involves relatively small amounts of money, took place in just one country, and senior executives were not involved, the DOJ often will not seek a criminal penalty, leaving enforcement to the SEC. ¶¶77, 95.

In 2014, as a result of its own investigation, the DOJ discovered that PTC had withheld material facts when it self-reported. ¶93. The DOJ ultimately did not decline to proceed against PTC. Moreover, because PTC's disclosure was not complete, the DOJ determined to withhold cooperation credit. *Id.* PTC ultimately paid disgorgement of $13.6 million to the SEC and a fine of $14.5 million to the DOJ. ¶¶10, 12.

On July 9, 2015, during trading hours, PTC issued a press release announcing its preliminary earnings for Q3 2015 (the "July 9 Earnings Release"), disclosing that it would record a $13.6 million liability for disgorgement of profits related to the SEC's FCPA investigations. ¶9. PTC announced that despite this substantial disgorgement, settlement

discussions with the SEC and DOJ were ongoing, and it might have to pay fines and penalties. *Id.* Given PTC's statements highlighting its cooperation with the SEC and DOJ, the markets were surprised that the substantial disgorgement was not sufficient to resolve liability. *Id.* The next day, PTC's stock price fell $2.00/share, or about 5%. *Id.* Then, on July 29, 2015, after markets closed, PTC issued its definitive earnings release for Q3 2015 (the "July 29 Earnings Release"), disclosing that negotiations with the SEC and DOJ were ongoing – showing that the negotiations were not a mere matter of tying up loose ends, and suggesting that the fine PTC would have to pay would be substantial. ¶10. The next day, PTC's stock price fell $1.56/share, or about 4%. ¶11.

## IV.    BRIEF SUMMARY OF THE PROPOSED SETTLEMENT

### A.    The Settlement Class

The Settlement Class consists of all Persons (except Defendants, members of the immediate family of any individual defendant, any entity in which any Defendant has more than a 50% ownership interest, or which any Defendant controls, and the legal representative, heirs, successors, or assigns of any such excluded party) who purchased, otherwise acquired or sold PTC common stock during the period from November 24, 2011 through July 29, 2015 inclusive, excluding those Persons who timely and validly request exclusion from the Settlement Class in accordance with the instructions contained in and requirements of the "Notice of Pendency and Settlement of Class Action" to be sent to the Settlement Class.

As consideration for the proposed Settlement, Defendants have agreed to pay $2,100,000 in cash on behalf of all Defendants to a separate, interest-bearing escrow account designated and controlled by the Claims Administrator on behalf of Lead Plaintiff and the Settlement Class. In return, the Settlement Class Members will release all Released Claims

5

(including Unknown Claims) against any and all of the Defendants and certain other persons associated with them, such as other PTC employees or subsidiaries ("Released Parties").

The Parties intend to, at final approval, ask the Court to determine that the proposed Settlement is fair, reasonable, and adequate, the Parties will ask the Court to enter the Final Order and Final Judgment (Exhibit B to the Stipulation). The Final Approval Order provides, among other things, that upon the Effective Date, Lead Plaintiff and all Settlement Class Members and anyone claiming through or on behalf of any of them, are forever barred and enjoined from bringing or continuing any Released Claim against any of the Released Parties, whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release form.

Under the Stipulation, Lead Counsel may submit an application for an award of reasonable attorneys' fees of up to one-third of the Settlement Fund, payment of actually and reasonably incurred expenses up to $40,000, and an incentive award to Lead Plaintiff not to exceed $2,500. The Fee and Expense Applications will be filed at the same time as the motion for final approval of the Settlement.

## V.   ARGUMENT

### A.   Certification Of The Settlement Class Is Appropriate

The Court must preliminarily determine whether to certify the Class for settlement purposes. *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 101 (D. Mass. 2010) (Woodlock, J.). "When a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (Stearns, J.). But "[t]his cautionary approach notwithstanding, the law favors class action

settlements." *Id.* (*citing City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). Indeed, "[t]here is little question that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that [Rule 23] has been liberally construed to effectuate that end." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989).

To obtain class certification, the plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3). *Hochstadt*, 708 F. Supp. 2d at 102 (*citing Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003)). Here, Lead Plaintiff asserts that the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) have been satisfied.[4]

## 1. The Proposed Settlement Class Meets The Prerequisites For Class Certification Under Rule 23(a)

**Numerosity**: Rule 23 permits class certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Advert. Special. Nat. Ass'n v. Fed. Trade Comm'n*, 238 F.2d 108, 119 (1st Cir. 1956); *accord George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 173 (D. Mass. 2012) (Casper, J.) (same). This is "not a difficult burden" for plaintiffs to satisfy. *See In re Carbon Black Antitrust Litig.*, No. CIV.A.03-10191-DPW, 2005 WL 102966, at *9 (D. Mass. Jan. 18, 2005) (Woodlock, J.). Lead Plaintiff "need not pinpoint the exact number of class members." *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 10 (D. Mass. 2010) (Gertner, J.). Rather,

---

[4] Under the terms of the Stipulation, the Parties have agreed, for the sole purpose of the Settlement and without an adjudication of the merits, to certification of the Settlement Class. (Stipulation at ¶9.1).

"courts may draw reasonable inferences from the facts presented to find the requisite numerosity." *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010) (Young, J.). While numerosity must be determined based on the relevant circumstances of each case, a class of 40 or more individuals will generally suffice. *See In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003) (Young, J.).

At the close of the Class Period, PTC had approximately 114 million shares outstanding and hundreds of thousands of PTC shares traded hands each day. Thus, there are hundreds, if not thousands, of geographically dispersed members of the Settlement Class. *See In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011) (Gorton, J.) (finding numerosity based on number of shares outstanding and number of shares traded). The size of the Settlement Class thus makes joinder of all members impracticable. Moreover, certification would promote judicial economy and uniformity of decision regarding class members' claims. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-32 (1st Cir. 1985). Thus, numerosity is met.

**Commonality:** Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is a "low hurdle." *S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007) (Gorton, J.). Commonality is satisfied when a plaintiff shows that there are questions of law and facts common to the class. *Donovan*, 268 F.R.D. at 10. In securities class actions, the commonality requirement is satisfied where "common questions of conduct, causation, and harm identified by [Lead Plaintiff] underlie and are essential to the claims of all members of the proposed class." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 259-60 (D. Mass. 2005).

8

Here, Lead Plaintiff's and the Settlement Class's claims arise out of the same alleged misstatements and omissions from Defendants' Class Period statements. They raise a host of common questions, such as: (1) whether Defendants made materially false and misleading statements regarding self-reporting their FCPA violations to the SEC and DOJ; (2) whether Defendants omitted material information regarding the same; (3) whether the alleged false statements and omissions were material; and (4) whether the Settlement Class sustained damages and the appropriate measure thereof. Similar issues "have repeatedly been held to satisfy the commonality requirement." *Evergreen*, 275 F.R.D. at 389. Thus, commonality is met.

**Typicality:** Rule 23(a)(3) asks whether plaintiffs' claims "are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The fundamental policy underlying typicality is to ensure that Lead Plaintiff's incentives are aligned with the pursuit of the Class' claims. *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 178 (D. Mass. 2012) (Tauro, J.). This requirement is also not demanding. *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass. 2003) (Gertner, J.). To satisfy the typicality requirement, Lead Plaintiff's claims "only need to share the same essential characteristics, and need not be identical." *Payne,* 216 F.R.D. at 26. Lead Plaintiff's claims are typical if his "injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when [his] claims and those of the class are based on the same legal theory." *Swack*, 230 F.R.D. at 260.

Lead Plaintiff's claims arise from Defendants' exact same course of conduct as the Settlement Class Members' claims, and asserts identical legal theories on liability and damages. Lead Plaintiff thus satisfies typicality. *See Swack*, 230 F.R.D. at 260.

**Adequacy:** Rule 23(a)(4) requires Lead Plaintiff to show that "the representative parties

will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Like typicality, adequacy relates to the alignment of Lead Plaintiff's interests with those of a proposed class. *See In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008) (Gertner, J.). Courts must determine: (1) whether any conflicts of interest exist between Lead Plaintiff and the class members, and (2) whether class counsel is qualified, experienced, and able to prosecute the case vigorously. *Id*. Only a "fundamental" conflict of interest may render a class representative inadequate, "and speculative conflict[s] should be disregarded at the class certification stage." *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 265 (D. Mass. 2008) (Saris, J.) (*quoting In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001)).

No conflict exists here. Indeed, Lead Plaintiff's interests are directly aligned with the interests of the Settlement Class since they all purchased stock during the Class Period and have a common goal of proving the same false and misleading statements and omissions. Moreover, Lead Plaintiff has already demonstrated his commitment to monitor and supervise the prosecution of this action on behalf of the Settlement Class. Lead Plaintiff filed this case and has actively participated in it since. In addition, Lead Plaintiff's Counsel is qualified and capable of prosecuting this action. Lead Counsel has been prosecuting securities class actions for years with a proven track record of success. Adequacy is met.

## 2.  The Proposed Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

Lead Plaintiff seeks class certification under Fed. R. Civ. P. 23(b)(3) and therefore must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here,

Lead Plaintiff satisfies these elements.

**Common Questions of Law and Fact Predominate.** Certification under Rule 23(b)(3) requires that "a sufficient constellation of common issues binds class members together." *Evergreen*, 275 F.R.D. at 392 (*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)). However, the standard does not require a class-wide uniformity of issues, and is met even where "individual issues [are] present in one or more affirmative defenses." *Smilow*, 323 F.3d at 39-40.

The predominant issues for all Settlement Class Members are whether Defendants are liable and the amount of per-share damages. That is, the issues are whether Defendants made false statements, whether the statements were material, whether the statements were made with scienter, and whether the statements caused artificial inflation in the price of PTC's stock and caused Settlement Class Members' losses when it was publicly revealed that they were not true. Every one of these issues is susceptible to common proof.

In contrast, the sole individual issue is the amount of Settlement Class Members' purchases, acquisitions, and sales of PTC common stock, which can be shown through purely ministerial proof. [5] Because Lead Plaintiff's proof regarding these misrepresentations and omissions will be offered on a uniform Class-wide basis, as all Class Members' claims will be proven by the same evidence, common questions of law and fact overwhelmingly predominate

---

[5] When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, **would present intractable management problems**, for the proposal is that there be no trial." *In re Volkswagen & Audi Warranty Extension Litig.*, 273 F.R.D. 349, 354 (D. Mass. 2011) (Tauro, J.) (emphasis added) (*quoting Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997)). While reliance is an element of Lead Plaintiff's claims, the inability to show reliance goes to **manageability at trial** of a class action. See *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("*AIG*"). Therefore, the Court need not determine whether Lead Plaintiff is entitled to a presumption of reliance, remedying "for the proposal is that there be no trial." *AIG*, 689 F.3d at 242.

over individual questions. *See In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012) ("Where issues of liability are 'common to the class, common questions are held to predominate over individual questions.'"). Accordingly, predominance is met.

**A Class Action Is Superior**. Rule 23(b)(3) is satisfied if a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Investors seeking damages for violations of the federal securities laws are "the prototypical class action plaintiffs." *Credit Suisse*, 253 F.R.D. at 23. This is partly because the burden placed upon courts by individual actions would be "enormous" in a case such as this, with hundreds of Class Members. *Swack*, 230 F.R.D. at 273; *accord IndyMac*, 286 F.R.D. at 242 ("Requiring [a class of several hundred members] to bring individual actions, seek joinder, or else sit on their claims, would be inefficient."). Rule 23(b)(3) provides four factors for courts to consider in evaluating the superiority requirement: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). These factors weigh in favor of certifying the Class.

First, to Lead Plaintiff's knowledge, no other Settlement Class Member has brought a similar action, or even moved to be appointed lead plaintiff in this action. "[T]he fact that few suits have been filed indicates that the class members have no great interest in controlling the prosecution of the litigation." *In re Revco Sec. Litig.*, 142 F.R.D. 659, 669 (N.D. Ohio 1992); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("a relatively small number of individual lawsuits . . . indicated . . . that there was a lack of interest in individual

12

prosecution of claims"). Second, and similar, because no overlapping actions exist, there is no concern of inconsistent rulings or judgments. *See Relafen*, 218 F.R.D. at 347 (finding superiority where the court was "not aware of any other 'litigation concerning the controversy already commenced by or against members of the class' which might otherwise create a threat of multiplicity and inconsistent adjudications"); *IndyMac*, 286 F.R.D. at 242-43 (finding superiority where "the parties are aware of no investors pursuing individual claims regarding these same offerings"). Third, it is desirable to concentrate litigation in this forum. It is desirable for all Class members that their claims be resolved in one court that is familiar with the issues and has a record of efficiently adjudicating the litigation. Finally, this Court is unlikely to face manageability difficulties with this class action "apart from those inherent in any hard fought battle where substantial sums are at issue and all active parties are represented by able counsel." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 305 (S.D.N.Y. 2003). Courts have recognized that class actions predicated on Exchange Act claims, like this action, are appropriate for class certification. *See Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *4 (D.R.I. Feb. 17, 2016); *Swack*, 230 F.R.D. at 273.

### B.  Preliminary Approval Of The Settlement Is Warranted

Under Rule 23(e), claims of a certified class may be settled "only with the court's approval." Fed. R. Civ. P. 23(e). The purpose of requiring court approval of a class action settlement is to ensure that the settlement is fair, adequate and reasonable. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009). In determining whether to approve the proposed Settlement, the Court should follow the two-step process outlined in the Manual for Complex Litigation. *See* Manual for Complex Litigation ("MCL"), §§21.632-21.635 (4th ed. 2004); *see, e.g., Hochstadt*, 708 F. Supp. 2d at 97 n.1, 106-08 (applying the

analysis provided by the MCL and preliminarily approving class action settlement). Typically, this involves first determining whether the settlement is entitled to preliminary approval (step one) and then if so, whether the settlement should receive final approval (step two). "[A] presumption of fairness attaches to the court's preliminary fairness determination when (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Hochstadt*, 708 F. Supp. 2d at 107 (internal quotations omitted).

This action is only at the first step – preliminary approval. At this stage, the Court must review the proposed terms of the Settlement and make a "'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Hochstadt*, 708 F. Supp. 2d at 107 (quoting MCL §21.632). The Court should only examine whether the proposed Settlement is within the range of possible approval, bearing in mind that the Court will have the opportunity to consider all of the relevant factors at a subsequent fairness hearing, which is the second step in the settlement approval process. *See Hochstadt*, 708 F. Supp. 2d at 107-08.

### 1.   The Negotiations Occurred At Arms' Length

Settlement negotiations between experienced counsel are presumed to be fair and not a product of collusion. *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (Gorton, J.); *Brown v. Steinberg*, No. 84 CIV. 4654 (CMB), 1990 WL 145151, at *3 (S.D.N.Y. Sept. 22, 1990). Lead Counsel are experienced counsel. In fact, they specialize in prosecuting securities class actions, particularly those involving misconduct in China. *See* Rosen Law Firm's Firm Resume as Exhibit 1 to the Declaration of Laurence Rosen ("Rosen Decl."); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is

confident that it has the necessary skill and knowledge to effectively prosecute this action");

*Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015) ("As set forth in

its papers and at the April 24, 2015 conference, the Rosen firm has extensive experience

navigating the particular complexities of litigation with Chinese companies that may claim a

state secrets privilege [and] employs fluent Chinese speakers").

And the negotiations were at arm's length. The parties' negotiations stretched over

almost two months. Both sides obtained expert damages estimates. Lead Plaintiff received

information from former PTC employees and documents resulting from a Freedom of

Information Act ("FOIA") request to the SEC. And negotiations benefited from adversarial

briefing on Plaintiff's Amended Complaint. The settlement, reached after informed negotiations

between Lead Plaintiff's Counsel and Defense Counsel, was fair and not a product of fraud,

collusion, or abandonment of the interests of the Class.

### 2.   A Sufficient Investigation Was Conducted

Lead Counsel and Lead Plaintiff were well-informed about the strengths and

weaknesses of the case at the time of settlement due to Lead Counsel's investigation, briefing

on Defendants' motion to dismiss, review of documents produced in response to a FOIA

request, discussions with former employees, an expert damages report, and Lead Counsel's

experience with securities litigation. This detailed knowledge informed the Settlement

negotiations. Lead Plaintiff and his counsel were able to fully evaluate the merits of the claims

and the risks of continued litigation, and make an intelligent judgment about settlement. *See*

*Hochstadt*, 708 F. Supp. 2d at 107.[6]

---

[6] That no formal discovery was taken did not bar Lead Plaintiff from obtaining enough facts to
evaluate the claims at issue. "[I]n the context of class action settlements, formal discovery is not
a necessary ticket to the bargaining table where the parties have sufficient information to make
an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

### 3.   The Proponents Of The Settlement Are Experienced In Similar Litigation

This Action has been litigated by experienced and competent parties and counsel on both sides of the case. As set out above, Lead Counsel specializes in prosecuting securities class actions, and especially in cases involving misconduct in China. Defense counsel, Goodwin Procter LLP, obviously also is extremely experienced in securities class actions. That such well-informed parties and counsel, operating at arm's length and after hard-fought litigation and settlement negotiations, endorse the Settlement as being fair, reasonable and adequate, weighs in favor of granting preliminary approval of the Settlement.

### 4.   Number Of Objections

As in *Hochstadt*, since the notice to the Settlement Class has not yet been issued, this factor can only be assessed preliminarily.[7] *See Hochstadt*, 708 F. Supp. 2d at 108. Lead Counsel is not aware of any objectors and Lead Plaintiff has actively participated in the Action and approved the decision to enter into the Settlement with Defendants. Moreover, counsel on both sides have weighed the costs, risks and delay associated with continuing litigation against the benefits of settlement as reflected in the Stipulation.

### 5.   The Settlement is within the range that might be found approvable.

It is well established in this Circuit that there is a "'clear policy in favor of encouraging settlements.'" *Durrett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990)

---

(9th Cir. 2000) (internal quotations omitted). Informal information sharing is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay, which stays discovery until after a motion to dismiss is decided. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). If discovery were a prerequisite to settlement approval, it would be impossible to settle a PSLRA action before denial of a motion to dismiss. But in fact, 30% of the securities class action settlements approved in 2015 were reached before a motion to dismiss. Rosen Decl. Ex.2, at 20.

[7] Lead Counsel will address any objections in connection with the motion for final approval of the Settlement.

(citation omitted); *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015) (O'Toole, J.). To determine whether a settlement is fair, reasonable, and adequate, the case law "offer[s] a laundry list of factors, most of them intuitively obvious and dependent largely on variables that are hard to quantify." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009). These factors ultimately leave the Court with a wide measure of discretion. *Id.* at 45. "[U]sually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Id.* at 44.

In this case, Lead Plaintiff's expert estimated that damages, including class members' losses resulting from the July 9 and 29 Earnings Releases were $72.8 million. But Lead Plaintiff's theory was that the second corrective disclosure, which did not per se reveal any new information, nevertheless imparted information by showing that PTC had not been able to settle the DOJ action in the three weeks since it had announced preliminary results, the first corrective disclosure. Recovery on this theory would be extremely difficult.

Damages resulting from the July 9 Earnings Release were $49.5 million. The settlement thus recovers 4.2% of total maximum damages, or almost double the average securities class actions with damages of between $50-124 million. Rosen Decl. Ex.2 at 9.

This is an excellent result. This case was so obviously difficult that no class member other than Mr. Crandall, and no law firm other than Lead Counsel, moved for appointment. Loss causation presents an imposing challenge in this case. The July 9 Earnings Release announced that (a) PTC would pay disgorgement of $13.6 million, and (b) negotiations over fines and penalties were continuing. But failure to cooperate and self-report has no impact on

the fact or amount of disgorgement, since that amount is based on total profits and interest, and disgorgement is typically required even of companies that self-report. Rather, Lead Plaintiff would have been required to show that: (1) the markets had previously that PTC would receive a declination because of its cooperation and self-disclosure; (2) PTC's claim that negotiations were continuing revealed to the markets that there would be no declination; and (3) this revelation corrected the market's impression. There is risk in advancing a theory that requires such inferential leaps – perhaps. Moreover, declinations are no sure thing; even if PTC had self-reported and cooperated, it is still not clear that the SEC and DOJ would not have declined to prosecute. And neither did PTC's announcement report that the SEC and DOJ definitively would prosecute, stating only that fines "might" be imposed.

But Lead Plaintiff also faced challenges in pleading and proving falsity and scienter. Defendants deny both that their statements were false and were made with scienter. Moreover, the SEC Order – though admittedly drafted by PTC – claims that PTC only discovered the full scope of the problem in 2014. And Defendants have argued, and would argue if the case proceeded, that they did not withhold information from the SEC and DOJ, but merely failed to appreciate its importance. In this regard, even if Defendants' conduct was "inexcusably negligent," it was not securities fraud. *Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 12 n.10 (1st Cir. 2006).

Ultimately, it is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential- Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992). Indeed, a trial is always a risky proposition. *See Hochstadt*, 708 F. Supp. 2d at 109. And "[c]ourts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-

18

3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010). "The risk inherent in such litigation is exacerbated in actions brought pursuant to the Exchange Act, which requires a plaintiff to establish that such misstatements or omissions of material fact were made with *scienter.*" *Athale v. Sinotech Energy Ltd.*, No. 11 CIV. 05831 (AJN), 2013 WL 11310686, at *5 (S.D.N.Y. Sept. 4, 2013). This case, a class action under the Exchange Act, raises all of these challenges.

In light of these risks, expenses, and uncertainties, the Settlement is an excellent recovery that is fair, reasonable, and adequate.

### C. The Proposed Form And Method Of Class Notice Are Appropriate And Satisfy The Requirements Of Rule 23

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound" by the proposed Settlement. Fed. R. Civ. P. 23(e)(1). Notice must be "reasonably calculated, under all circumstances, to apprise intended parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Bank & Trust Co*., 339 U.S. 306, 314 (1950). Here, the proposed form and manner of the Notice satisfy these requirements. As more fully detailed in the Preliminary Approval Order (Exhibit A to the Stipulation), Lead Counsel will cause the Notice (Exhibit A-1 to the Stipulation) and Proof of Claim and Release (Exhibit A-2 to the Stipulation) to be mailed to all identifiable and potential Members of the Class. The Notice directs Class Members to the websites of the Claims Administrator and Lead Counsel for copies of all Settlement documents. A summary notice (Exhibit A-3 to the Stipulation) will also be published once in the *Investor's Business Daily* and once over *GlobeNewswire*. Preliminary Approval Order ¶10(c). Courts have repeatedly approved this exact form of notice. *See, e.g.*, *Fidel v. Farley*, 534 F.3d 508, 511 (6th Cir. 2008) (adequate notice provided by publication of notice in *Investor's Business Daily* and

19

mailing notice to potential class members); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014) (similar).[8]

Moreover, the content of the Notice includes the general terms of the Settlement as set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Applications, the date of the Final Approval Hearing, as well as the other details required by the PSLRA. The Notice advises recipients that they have the right to exclude themselves from the Settlement, or to object to any aspect of the Settlement. The Notice also provides recipients with the contact information for the Claims Administrator and Lead Counsel. Accordingly, the proposed Notice provides Settlement Class Members with all information required by Rule 23(e), the PSLRA and due process. The Notice therefore complies with all applicable legal requirements, and should be approved.

## VI.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff respectfully requests that the Court set a schedule of events to govern the remaining procedural aspects of the proposed Settlement:

| | |
|---|---|
| Notice and Proof of Claim and Release form mailed to Class Members (Preliminary Approval Order, ¶10(a)) | 16 calendar days after entry of the Preliminary Approval Order |
| Summary Notice published (Preliminary Approval Order, ¶10(c)) | Within 16 calendar days after entry of the Preliminary Approval Order |
| Deadline for filing papers in support of the Settlement, Plan of Allocation, and request for an award of attorneys' fees and expenses (Preliminary Approval Order, ¶20) | 34 calendar days prior to the Final Approval Hearing |
| Deadline for requesting exclusion from the Class (Preliminary Approval Order, ¶14) | 30 calendar days prior to the Final Approval Hearing |

---

[8] Courts in the First Circuit have approved similar notice. *In re StockerYale, Inc. Sec. Litig.*, No. 105CV00177-SM, 2007 WL 2410361, at *2 (D.N.H. Aug. 21, 2007) (approving combination of mailed notice, and publication by press release and on *Investor's Business Daily*).

| Deadline for filing objections to the Settlement, Plan of Allocation, or request for attorneys' fees and expenses (Preliminary Approval Order, ¶16) | 17 calendar days prior to the Final Approval Hearing |
|---|---|
| Deadline for filing reply papers in support of the Settlement, Plan of Allocation, and request for an award of attorneys' fees and expenses (Preliminary Approval Order, ¶20) | 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order, ¶7) | Lead Plaintiff suggest on or after 110 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience, |
| Deadline for submitting Proof of Claim and Release forms (Preliminary Approval Order, ¶12(a)) | 44 calendar days prior to the Final Approval Hearing |

Further, Lead Plaintiff respectfully requests that the Final Approval Hearing be scheduled for approximately 110 days after the entry of the proposed Preliminary Approval Order, or later at the Court's convenience, in order to properly effectuate the notice process and deadlines above. If this schedule is not convenient for the Court, Lead Plaintiff requests the Court use at least the same or greater intervals between each event listed in the schedule in order to provide sufficient time to comply with the Preliminary Approval Order.

## VII.    CONCLUSION

For the foregoing reasons, the proposed Settlement warrants the Court's preliminary approval and Lead Plaintiff respectfully requests this Court enter the Preliminary Approval Order (Exhibit A to the Stipulation), and set a schedule of events to govern the remaining procedural aspects of the proposed Settlement.

Dated:  January 13, 2017

BLOCK & LEVITON LLP

By:  _/s/_ Jason M. Leviton
Jason M. Leviton (BBO# 678331)

21

Joel A. Fleming (BBO# 685285)
155 Federal Street, Suite 400
Boston, MA 02110
Tel.: 617.398.5600
Fax: 617.507.6020
jeff@blockesq.com
jason@blockesq.com
joel@blockesq.com

*Liaison Counsel for Lead Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
Jonathan Horne, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Tel.: (212) 686-1060

*Lead Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 13, 2017.

 /s/  Jason M. Leviton